UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2024 SEP 19  AM 10: 48

BY _____

| | |
|---|---|
| REIN KOLTS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )   Case No. 2:21-cv-221 |
| | ) |
| THOMAS CARLSON, | ) |
| | ) |
| Respondent. | ) |

**OPINION AND ORDER**
**ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION,**
**DENYING INITIAL PETITION FOR WRIT OF HABEAS CORPUS, AND**
**DENYING SECOND PETITION FOR WRIT OF HABEAS CORPUS**
(Docs. 4, 17, & 39)

This matter came before the court for a review of the Magistrate Judge's July 3, 2024 Report and Recommendation ("R & R") (Doc. 39), in which the Magistrate Judge recommended that the court dismiss both the initial petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 4) and the second petition for a writ of habeas corpus (Doc. 17) filed by Petitioner Rein Kolts. On July 18, 2024, Petitioner timely filed objections to the R & R.

Petitioner is self-represented. Respondent Thomas Carlson is represented by Addison County State's Attorney Eva Vekos.

**I.    Factual and Procedural Background.**

**A.    The Underlying Conviction and Initial Post Conviction Relief Petition.**

In January 2017, Petitioner, an inmate at Southern State Correctional Facility, was convicted after a jury trial in the Vermont Superior Court, Criminal Division (the "Vermont Superior Court") of aggravated sexual assault of a child. He was sentenced to a mandatory term of imprisonment of twenty-five years to life. On December 14, 2018, the Vermont Supreme Court affirmed his conviction.

In 2019, while represented by counsel, Petitioner filed an amended post-conviction relief ("PCR") motion in the Vermont Superior Court based on allegedly ineffective assistance of counsel.[1] The following year, Petitioner, representing himself, filed a second amended PCR petition, reasserting an ineffective assistance of counsel claim and arguing the prosecution violated the Supreme Court's holding in *Brady v. Maryland*, 373 U.S. 83 (1963) by withholding exculpatory evidence.

**B.     The April 16, 2021 Order.**

On April 16, 2021, Respondent, a former Vermont Superior Court Judge, denied Petitioner's motions to vacate his conviction, for a new trial, and for additional DNA testing (the "April 16, 2021 Order"). Respondent also denied Petitioner's claims that the State of Vermont (the "State") knowingly solicited perjured testimony and violated *Brady*. The April 16, 2021 Order states in relevant part:

> [Petitioner] has filed repetitive motions to vacate his 2017 convictions, for a new trial and for further DNA testing and hearing pursuant to 13 V.S.A. §5561 et seq. Variations of these motions have been consistently denied no fewer than ten times, including orders . . . dated March 18, 2019 and June 17, 2019. [Petitioner] continues to file the same claims, most recently in March and April 2021 to vacate his conviction and in April for a new trial. [Petitioner] also has pending post-conviction proceedings in the civil division and a long list of other cases he has initiated in this court and others, seeking relief from his convictions.
>
> Most recently, the court gave [Petitioner] one last chance to indicate that he actually had some new evidence or some basis for seeking further DNA testing. He has failed to do so. The court elaborates on that conclusion as follows, and in doing so it **denies all pending motions. The court further orders that no further motion filed by [Petitioner] regarding this docket shall be considered at all.** Repeated filing of the same motions about the same issues based on the same facts is an abuse of the system.

(Doc. 5-13 at 1) (emphasis in original).

---

[1] Pursuant to Fed. R. Evid. 802(b), the court takes judicial notice of the proceedings before the Vermont courts, including the March 13, 2023 Decision and Order denying Petitioner's request for post-conviction relief and the Vermont Superior Court docket sheets of Petitioner's PCR proceeding in Case No. 2-1-19 Ancv, his criminal proceeding in Case No. 217-5-14 Ancr, and the Vermont Supreme Court.

The April 16, 2021 Order observed that Petitioner submitted "at various times over the last few years" copies of (1) a March 16, 2017 email from the State's Attorney to Petitioner's attorney regarding forensic evidence (the "March 16, 2017 email"); (2) a June 26, 2015 forensic report; (3) a February 5, 2015 forensic report; and (4) the April 21, 2014 notes of a medical examination of the victim, all of which "were provided to the defense prior to trial." *Id.* at 1-2. Respondent advised Petitioner that additional claims should be brought in a civil PCR proceeding before the Vermont Superior Court, Civil Division (the "PCR court"). Petitioner did not appeal the April 16, 2021 Order.

## C.     Petitions Filed in Federal Court.

On September 27, 2021, Petitioner filed his initial § 2254 petition in this court and challenged the April 16, 2021 Order. The State moved to dismiss the petition. While the State's motion to dismiss was pending, Petitioner filed a second petition on September 12, 2022. In his petitions, Petitioner acknowledges Respondent considered and denied: (1) his request for additional DNA testing and for a hearing pursuant to 13 V.S.A. § 5561, (2) his request for a new trial on the basis of allegedly newly discovered evidence, (3) his claim that the State knowingly solicited perjury from a witness, and (4) his claim that the State withheld exculpatory evidence in violation of *Brady*.

On March 3, 2023, the Magistrate Judge issued an R & R in which he recommended the court dismiss both petitions on the basis that Petitioner failed to exhaust his claims in the Vermont Superior Court and because his claims were procedurally barred. The Magistrate Judge's conclusion was based on a finding that Petitioner had not appealed the April 16, 2021 Order and the time to do so had expired. The Magistrate Judge noted that, with the exception of the *Brady* claim, Petitioner failed to include the claims he raised in his § 2254 petitions to the PCR court.

The Magistrate Judge further determined that Petitioner had failed to exhaust his ineffective assistance of counsel claim and that claim was not procedurally defaulted, but Petitioner had not raised that issue in his § 2254 petitions.

With respect to Petitioner's *Brady* claim, the Magistrate Judge concluded that it was not exhausted and was not procedurally defaulted based on the pending PCR

3

proceedings in the PCR court, however, because Petitioner failed to demonstrate that this court should address the *Brady* claim regardless of his failure to exhaust, the Magistrate Judge recommended that claim be dismissed as well. Petitioner timely filed objections to the R & R. The court adopted the Magistrate Judge's recommendation in full, and Petitioner filed a motion for a certificate of appealability with the Second Circuit.

### D.     Additional Post-Conviction Proceedings in State Court.

In September of 2022, Petitioner filed a self-represented PCR petition in the Vermont Superior Court and claimed that he had been prohibited from calling witnesses on his behalf at trial and that there was newly discovered forensic evidence which warranted a new trial. *See* Doc. 32-4. Petitioner stated that the newly discovered evidence was the March 16, 2017 email from Addison County Deputy State's Attorney Dennis Wygmans to James Gratton, Esq. which states in relevant part: "I can tell you that we did disclose DNA/Serology to [Petitioner's prior trial counsel]. . . . It's not exactly exculpatory, in that it identifies 3rd party DNA that is not complete enough to make a match with [Petitioner]. Additionally, it was the victim's original statement that [Petitioner] was wearing a condom on the last incident." (Doc. 33-2 at 1.) Petitioner subsequently filed a notice of voluntary dismissal of this claim, which the State court dismissed on March 3, 2023. *See* Doc. 32-5.

The PCR court conducted a trial in January 2023 to determine whether Petitioner's trial attorney failed to provide effective assistance of counsel with regard to advising him of the State's plea offer prior to trial. The PCR trial consisted of testimony from ten fact witnesses, including Petitioner, each of his prior defense attorneys, and one expert witness. Petitioner, who was represented at the PCR trial, averred that his trial attorney had not adequately advised him of the strength of the State's case against him, the likelihood of conviction, and the risk of a mandatory sentence of twenty-five years to life. Petitioner advised the PCR court that if he had been adequately advised, he would have accepted the plea offer of ten years to life, split to serve five years and, consequently, would have already reached his minimum time served by the time of the PCR trial. Despite testifying "that he was 'emphatically' not guilty[,]" Petitioner testified that he

4

would have accepted the plea offer had he understood the likelihood of conviction and a twenty-five year mandatory minimum. *In re Kolts*, 2024 VT 1, at ¶ 8, 312 A.3d at 508. Petitioner informed the court that he was "willing to falsely admit to the crime in order to get a reduced sentence[,]" and he asked the PCR court to order the State to re-offer the plea deal of ten years with five to serve. (Doc. 32 at 3.)

The PCR court concluded Petitioner's trial attorney failed to properly advise him of the plea offer and provided ineffective assistance of counsel. The PCR court nevertheless declined to grant relief because Petitioner's repeated claims of innocence and his PCR testimony that he would perjure himself in admitting guilt to obtain a shorter sentence would prohibit a trial court from accepting Petitioner's guilty plea. The PCR court ruled:

> The [Petitioner] testified that if he had been properly advised about the benefit of the plea offer as opposed to the probable consequences of going to trial, he would have accepted the plea offer. He testified that would plead guilty even though he claimed to be innocent.
>
> . . .
>
> He testified that he would plead guilty even though he would be lying about the essential elements. He further testified that even if he were placed under oath before admitting to the facts, he would lie under oath.
>
> It is clear that a judge cannot accept a guilty plea if he knows the defendant is lying and certainly cannot if the defendant is lying under oath. If nothing else, a judge could not accept a plea if defendant, not under oath, lied about the underlying facts. Such a plea would not only be unlawful, it would also open the door to post-conviction relief. Accepting a plea support[ed] by defendant's false statement under oath would be even more problematic.
>
> . . .
>
> If post-conviction relief were to be granted based on [defense counsel's] substandard representation, the [Petitioner] would not thereby be entitled to a new trial but, at most, resentencing pursuant to the plea offer . . . before the undersigned [court]. The undersigned is obviously aware of the [Petitioner's] persistent claim of innocence and of his intention to lie under oath in order to plead guilty. The undersigned would not thereby accept the plea. Nor could the situation be avoided by simply transferring the case to another judge.

(Doc. 32-7 at 12-13) (citations and footnote omitted). Petitioner timely appealed the PCR trial decision.

### E. The Second Circuit's Mandate.

On December 12, 2023, the Second Circuit issued a mandate and granted Petitioner a certificate of appealability "for the limited purpose of [vacating] the judgment and [remanding] the case to the district court for a determination of whether [Petitioner] can still exhaust any of his claims and, if he can, to proceed appropriately as to his unexhausted claims." (Doc. 27 at 1.) The mandate further stated:

> In arguing that the 28 U.S.C. § 2254 claims were procedurally barred, [Respondent] asserted that [Petitioner] had a pending post-conviction relief proceeding in state court and "[i]f he appeals the civil court's future decision, the majority of Petitioner's claims within his Writ will be reviewable by the Vermont Supreme Court." Respondent's Answer to Petitioner's Writ of Habeas Corpus at 2, *Kolts v. Carlson*, No. 21-cv-221 (D. Vt. Oct. 27, 2021), [Doc.] 5; *see also id.* at 7 (arguing that "[t]he Vermont Supreme Court may have the opportunity to review most of Petitioner's claims within his Writ as several of his issues" were raised in the pending state court proceeding). Moreover, the magistrate judge acknowledged that one of Appellant's claims "may not be procedurally defaulted." Report and Recommendation at 8 n.6, *Kolts v. Carlson*, No. 21-cv-221 (D. Vt. Mar. 3, 2023), [Doc.] 21. As such, further examination of these issues and any others is warranted on remand.

*Id.* The Second Circuit did not order this court to release Petitioner, vacate his conviction, grant his petition for a writ of habeas corpus, or reverse the April 16, 2021 Order.

### F. Post-Mandate Proceedings in Federal and State Court.

On January 5, 2024, the Vermont Supreme Court reversed the PCR court's decision and remanded for a determination of whether there was a reasonable probability that, in January of 2017, without considering his post-conviction claims of innocence, the Vermont Superior Court, Criminal Division would have accepted Petitioner's guilty plea. The Vermont Supreme Court stated that, if Petitioner successfully established prejudice on remand, "[t]he remedy is to first require the prosecution to reoffer the plea proposal, and then for the criminal court to exercise discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed." *In re Kolts*, 2024 VT 1, at ¶ 24, 312 A.3d at 512 (internal quotation marks omitted). The Vermont

Supreme Court stated that "[i]n exercising [its] discretion, the criminal court may consider [P]etitioner's postconviction assertions of innocence, as well as statements he made at the PCR trial." *Id.* at ¶ 30, 312 A.3d at 514.

On March 1, 2024, this court directed the parties to file supplemental memoranda "informing the [c]ourt of the status of [Petitioner's] PCR proceedings in the Vermont Superior Court, particularly with respect to his *Brady* claim, and any appeals [Petitioner] has filed in the Vermont Supreme Court." (Doc. 30 at 4.) The State filed its responsive memorandum on March 19, 2024 and stated that, at that time, Petitioner, who was represented, had one active PCR petition in the Vermont Superior Court, Addison Unit, which was on remand from the Vermont Supreme Court. The State further represented that it was unaware of any active *Brady* claims in the State PCR petition, and that because Petitioner's 2017 conviction had been affirmed by the Vermont Supreme Court, the State believed Petitioner had exhausted his appellate remedies related to that conviction. The State filed its memorandum and stated the following:

> (i) There is only one active PCR petition at this time: Case No. 2-1-19 Ancv. This matter is now before the Addison County Civil Court, on remand from the Vermont Supreme Court. The case is scheduled for briefings to be filed by each of the parties. [Petitioner] is represented by Annemarie Manhardt, Esq. This [petition] does not involve any *Brady* claims.
>
> (ii) The State is not aware of any active *Brady* claims that are presently on appeal or that are the subject of any PCR petitions.
>
> (iii) [Petitioner] appealed his 2017 criminal conviction for aggravated sexual assault of a child, and the Vermont Supreme Court affirmed. He has exhausted any appellate remedies related to that conviction. The State is not aware of any other pending appeals before the Vermont Supreme Court related to the [P]etitioner.

(Doc. 32 at 1-2.)

On March 21, 2024, Petitioner filed his supplemental memorandum and "reintroduce[d] ironclad *Brady* violations, which this court already possess[ed], and filings which do not just APPEAR to be, but <u>are</u> factual evidence." (Doc. 33 at 1) (capitalization and emphasis in original). He argued that the mandate ordered this court to "VACATE the [judgment], accept the *Brady* violation, release [him] on those grounds and wait for the State to reply." *Id.* (capitalization in original). He attached the March 16,

7

2017 email, a page from the April 16, 2021 Order, and a response to the State's supplemental memorandum in which he sought to distinguish between pre-trial and postconviction claims.

On May 13, 2024, the PCR court issued an order finding "there is a reasonable probability that the criminal court would have accepted the plea offer." The court therefore entered judgment in Petitioner's favor and remanded the case to the Vermont Superior Court, Criminal Division and directed the State to reoffer the plea deal. The PCR court reiterated that "[i]n exercising [its] discretion, the criminal court may consider the [P]etitioner's postconviction assertions of innocence, as well as the statements he made at the PCR trial." *Kolts v. Vermont*, Case No. 2-1-19 Ancv (Vt. Super. Ct., Addison Unit, May 13, 2024).[2]

In its May 13, 2024 findings and order, the PCR court concluded that Petitioner had proved there is a reasonable probability that the criminal court would have accepted a guilty plea from Petitioner before his trial. In so ruling, it made the following findings of fact:

> 1. Rein Kolts is serving a mandatory minimum sentence of twenty-five years to life following his conviction of aggravated sexual assault of a child, repeated, in violation of 13 V.S.A. § 3253a(a)(8).
>
> 2. In the spring of 2014, Mr. Kolts' thirteen-year-old niece, A.H., accused him of raping her repeatedly over the course of two years, beginning when she was eleven years old.
>
> 3. The allegations came to light in April 2014, when A.H. told friends that she had been sexually assaulted by her father, a boy named "Kenny," and Mr. Kolts.
>
> 4. Following the initial disclosure to her friends, A.H. told the school nurse that only Mr. Kolts had sexually assaulted her.
>
> 5. In all her subsequent statements—to the Sexual Assault Nurse Examiner, in her interview at the Child Advocacy Center, in her interview at the

---

[2] The court takes judicial notice of the Vermont Superior Court docket in *Kolts v. Vermont*, Case No. 2-1-19 Ancv (Vt. Super. Ct., Addison Unit). *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

Chester Police Department, and at trial—A.H. confirmed that Mr. Kolts was the only assailant.

6. On May 13, 2014, Mr. Kolts met voluntarily with law enforcement at the Addison County Unit for Special Investigations.

7. After approximately thirty minutes of questioning, Mr. Kolts confessed to engaging in sexual intercourse with A.H. on multiple occasions.

8. Immediately following his confession, Mr. Kolts was taken to the Addison County courthouse for his arraignment.

9. While in the holding cell at the courthouse, Mr. Kolts made additional incriminating statements to Michael Hanson, a family friend who worked as a court officer.

10. Mr. Kolts had known Mr. Hanson since Mr. Hanson was a young child.

11. Mr. Kolts told Mr. Hanson, "I fucked up, I wasn't the first, she was way too young, what they said was true, I did it."

12. Mr. Kolts told Mr. Hanson that he wanted to plead guilty at his arraignment.

13. Mr. Kolts told Mr. Hanson, "Mike, you know I'm a stand-up guy, you know that I take accountability for my actions."

14. Mr. Hanson dissuaded Mr. Kolts from pleading guilty at arraignment.

15. Mr. Kolts was represented at his arraignment by the public defender for Addison County at that time, Jerry Schwarz.

16. Mr. Kolts pled not guilty at his arraignment, where $50,000 bail and conditions of release were set.

17. Mr. Kolts posted bail six days later and was released from prison pending trial.

18. Shortly after his arraignment, on June 2, 2014, Mr. Kolts retained Langrock Sperry & Wool for his defense.

19. Mr. Kolts was represented by Peter Langrock and Devin McLaughlin.

20. In the early days of the case, State's Attorney Dennis Wygmans made the following offer to Attorney Langrock and Attorney McLaughlin: If Mr. Kolts plead guilty, the State would agree to a recommended sentence of ten years to life, split to serve five years.

21. Mr. Kolts hired Mark Furlan to take over the case in November 2014.

22. In September 2015, Attorney Furlan deposed A.H.'s mother, her father, her sister, and the two friends to whom she had initially disclosed the abuse.

23. On December 1, 2015, Attorney Furlan informed the State of his intention to call two expert witnesses—Paula Nath and Charles Rossi—to opine on the circumstances of Mr. Kolts' confession.

24. On January 25, 2016, Attorney Furlan filed a motion to depose A.H.

25. On February 18, 2016, Attorney Furlan filed a motion to suppress Mr. Kolts' statements during his interview at the Addison County Unit on Special Investigations.

26. The suppression motion did not address Mr. Kolts' statements to Mr. Hanson.

27. The State deposed Ms. Nath, Mr. Rossi, and Mr. Kolts' primary care physician, Dr. Allan Curtiss, in April 2016.

28. Ms. Nath admitted in her deposition that she did not have any experience evaluating people in the context of false confessions.

29. Mr. Rossi admitted in his deposition that he had no expertise pertaining to false confessions, that he was not a forensic psychologist, and that Mr. Kolts was the first person he had ever encountered who had falsely confessed to a crime.

30. Following a hearing and additional briefing, the court denied Mr. Kolts' motion to suppress his confession in an opinion issued June 30, 2016.

31. The defense's motion to depose A.H. was denied on October 28, 2016.

32. The State filed a motion in limine to exclude Ms. Nath and Mr. Rossi on November 30, 2016.

33. Attorney Furlan deposed Bonnie Schumann, the Sexual Assault Nurse Examiner who had examined A.H., and Michael Richard, the New Hampshire officer who initially responded to A.H.'s complaint, on December 2, 2016.

34. A hearing on the State's motion in limine regarding Ms. Nath and Mr. Rossi was held on January 13, 2017.

35. Ms. Nath testified at the hearing that she was not a forensic psychologist and had no training in forensic psychology.

36. The court granted the State's motion, finding that Ms. Nath and Mr. Rossi were not qualified to offer opinions about the circumstances of Mr. Kolts' confession.

37. Attorney Furlan filed a motion to reconsider the court's decision to exclude Ms. Nath and Mr. Rossi.

38. The court denied Attorney Furlan's motion to reconsider on the record prior to the jury draw.

39. The jury draw was held on January 17, 2017.

40. That morning, the prosecution renewed its offer of ten years to life, split to serve five years.

41. Mr. Kolts rejected the offer.

42. The trial took place January 18 through January 20, 2017.

43. The Honorable Judge Samuel Hoar presided over the trial.

44. The State's evidence at trial included testimony from the following witnesses: Michael Richard (an officer with the Brookline Police Department), Detective Ruth Whitney (one of the officers to whom Mr. Kolts confessed), A.H. (the complaining witness), Deena Biesecker-Hall (the complaining witness' mother), Bonnie Schumann (the Sexual Assault Nurse Examiner who treated A.H.), and Michael Hanson (the family friend to whom Mr. Kolts confessed at the courthouse).

45. The State also played the full video of Mr. Kolts' interview and confession for the jury.

46. The defense's case consisted of testimony from Mr. Kolts' physician regarding his history of self-reported erectile dysfunction, testimony from his sister-in-law about the layout of the property where one of the assaults allegedly took place, and testimony from Mr. Kolts' neighbor who sometimes had game cameras recording the area where some of the assaults allegedly occurred.

47. The defense also presented testimony from Mr. Kolts' wife, Karin Hall-Kolts, about her husband's difficulty processing information.

48. Mr. Kolts did not take the stand.

49. The jury deliberated for less than two hours, from 12:22pm to 2:01pm, before returning a guilty verdict on count one, aggravated sexual assault of a child, repeated events, 13 V.S.A. § 3252a(a)(8); and count two, aggravated sexual assault, minor under the age of 13, 13 V.S.A. § 3252(a)(8).

50. After the jury delivered its verdict, the State made an oral motion to dismiss count two, 13 V.S.A. § 3253(a)(8), the allegation that originated in the Windsor Unit, Criminal division. The State requested that a conviction be entered only on count one, 13 V.S.A. § 3253a(a)(8).

51. After the jury returned its guilty verdicts, the trial court raised the possibility of permitting Mr. Kolts to remain in the community on home detention. Concluding that it did not have the statutory authority to order home detention until Mr. Kolts had been held without bail for at least seven days, Judge Hoar stated, It is not my desire to have Mr. Kolts spend a single

day in jail. Frankly, I wish I could find otherwise here today -- even the
seven days that this now requires that he spend is not the Court's
preference, so if it looks like DOC is not likely to approve home
confinement, then I would also invite a motion to review.

52. Attorney Furlan filed a motion for home detention on behalf of Mr.
Kolts, which was ultimately denied. At a hearing on the motion for home
detention, Attorney Furlan stated: [F]rankly, I knew -- I'm not sure Mr.
Kolts understood as well as I did -- that the -- once it became evident that
the -- his confession was going to be entered into evidence, that the
likelihood of prevailing at trial had dimmed considerably.

53. Mr. Kolts filed a motion to discharge Attorney Furlan on February 16,
2017.

54. The motion was granted, and Attorney James Gratton, Esq., was
assigned to represent Mr. Kolts at his sentencing.

55. Mr. Kolts was sentenced to the mandatory minimum term of 25 years to
life on July 24, 2017.

56. Mr. Kolts will reach his minimum sentence on December 10, 2041.

*Kolts v. Vermont*, Case No. 2-1-19 Ancv (Vt. Super. Ct., Addison Unit, May 13, 2024).[3]
Consequently, the PCR court remanded the case to the Vermont Superior Court, Criminal
Division and directed the State to reoffer the plea agreement and the court to consider the
plea offer in light of Petitioner's postconviction assertions of innocence and his
statements at the PCR trial.

###    G.    The May 13, 2024 R & R.

In a May 13, 2024 R & R addressing Petitioner's motions for a writ of execution
and a writ of mandamus, the Magistrate Judge observed that Petitioner had not appealed
the PCR court's dismissal of his *Brady* claim at summary judgment to the Vermont
Supreme Court in Case No. 2-1-19 Ancv. The Magistrate Judge clarified that his March
3, 2023 R & R addressed only Petitioner's failure to appeal his *Brady* claim to the extent
it was denied in Respondent's April 16, 2021 Order, and in an abundance of caution,
advised Petitioner of the apparent default based on his failure to appeal his *Brady* claim

-------------------------------------

[3] *Available at available at*
https://www.vermontjudiciary.org/sites/default/files/documents/kolts%20v%20state%20valente
%202-1-19%20ancv%205-13-24.pdf.

12

in the context of the PCR court's rulings. The Magistrate Judge thus permitted Petitioner to "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice[]" such that this court is authorized to consider his *Brady* claim in the § 2254 petitions. (Doc. 36 at 6) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

In his objections, in at times intemperate and abusive language,[4] Petitioner claims that the Magistrate Judge erroneously disregarded the directive of the Second Circuit mandate by requesting Petitioner demonstrate that he exhausted his *Brady* claim before the Vermont courts and that that claim is not procedurally barred. Petitioner attaches the March 16, 2017 email which he claims establishes a *Brady* violation. He points out the email did not exist at the time of his trial so it is "new evidence." He does not establish, however, that its contents constitute new evidence and the Vermont Supreme Court found that its contents, the DNA test results, were disclosed prior to trial.

On May 28, 2024 and June 7, 2024, Petitioner filed supplemental documents in which he reiterated that "[t]he central issue is a BRADY VIOLATION" (Doc. 37 at 1) and argued that the prosecutor in his case "admit[ted] to a third[-]party involvement (DNA profiles) with [n]o [m]atch to [Petitioner], qualifies for a new trial—[and]— magnifies the corruption of justice by [the prosecutor] to not follow through on investigating or prosecuting others." (Doc. 38 at 1.) Petitioner did not address the failure to appeal the PCR court's *Brady* ruling, explain the cause for his default and explain the prejudice he has suffered, or demonstrate that failure to consider his claim will result in a fundamental miscarriage of justice. He also does not explain his failure to appeal the

---

[4] *See, e.g.*, (Doc. 37 at 1) ("Mr. Doyle is like a rambling adolescent on crack who denies his addiction and REALITY!"); Doc. 40 at 1 ("In his judicial arrogance, Kevin J. Doyle imposes a 14 day limit to reply to his claims. . . . Doyle is himself confused from paragraph to paragraph about Brady being procedurally defaulted or not."); Doc. 40-1 at 1 ("This is the most egregious, erroneous, illegal, and frankly 'stupid' decision any judge has made."). He used similar language with the undersigned. Self-represented litigants are expected to engage in the same civility as represented litigants and their attorneys.


satisfy § 2254's exhaustion requirement, a petitioner must present the substance of the same federal constitutional claim[s] that he now urges upon the federal courts[] to the highest court in the pertinent state[.]") (citations and internal quotation marks omitted) (first alteration in original). Neither the State nor Petitioner has submitted documentation contradicting that conclusion.

The court agrees with the Magistrate Judge's conclusion that, even if Petitioner had raised an ineffective assistance of counsel claim before this court, that claim is unexhausted and must first be resolved by the Vermont courts. *See Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir. 1991) (ruling that a § 2254 claim "must "exhaust[] the remedies available in the courts of the State. In doing so, a petitioner must present his federal constitutional claims to the highest court of the state before a federal court may consider the merits of the petition[]") (internal quotation marks omitted) (first alteration in original).

Petitioner challenges the Magistrate Judge's conclusion that his *Brady* claim is not subject to review pursuant to § 2254 because it is deemed exhausted and procedurally defaulted, and Petitioner has failed to demonstrate cause and actual prejudice or a fundamental miscarriage of justice. In response, Petitioner repeats his claim that the March 16, 2017 email constitutes both new evidence and a *Brady* violation because the email did not exist at the time of his trial. He asserts it establishes prejudice. The email is not unequivocally exculpatory, and was squarely addressed by Respondent in his April 16, 2021 Order finding that the DNA testing it discusses *was* disclosed prior to trial and thus failed to present "new evidence or some basis for seeking further DNA testing." (Doc. 5-13 at 1.) Petitioner did not appeal those findings or any other aspects of the April 16, 2021 Order.

Finally, Petitioner reiterates his claim that the Second Circuit's mandate requires this court to vacate his conviction and sentence and release him. As discussed in this court's August 29, 2024 Opinion and Order, the Second Circuit's mandate does not vacate Petitioner's 2017 conviction or the resulting sentence. *See* Doc. 42 at 4 ("The Second Circuit's mandate does not obligate this court to vacate Petitioner's conviction in

state court nor order his immediate release. Instead, as the Magistrate Judge correctly noted, the mandate vacated the March 30, 2023 Opinion and Order of this court dismissing the § 2254 petitions and returned the case to this court to determine whether Petitioner has fully exhausted his state court claims and whether any of his claims were procedurally barred.").

On October 21, 2021, in the context of one of Petitioner's civil cases against the State, the Vermont Superior Court dismissed his *Brady* claim when it granted summary judgment in favor of the State of Vermont. (Doc. 5-12.) Petitioner did not appeal that decision to the Vermont Supreme Court. As a result, Petitioner did not "give the state courts an opportunity to act on his claims before he present[ed] those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Petitioner's obligation to exhaust his state court remedies required him to appeal the decision on his *Brady* claim to the Vermont Supreme Court. *Id.* His failure to do so is fatal to his *Brady* claim unless an exception applies.

The Magistrate Judge also properly concluded that Petitioner's *Brady* claim must be denied because it is deemed exhausted, is procedurally barred, and is "unreviewable in § 2254 proceedings in this [c]ourt." (Doc. 39 at 10); *see also Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) ("A state prisoner's procedural default in the state courts will also bar federal review except in narrow circumstances[.]"). Vermont Rule of Appellate Procedure 4(a) allows a party to appeal an order from the Vermont Superior Court within thirty days of the date of the order. Petitioner did not file a notice of appeal of the April 16, 2021 Order within thirty days, and if he were to appeal to the Vermont Supreme Court at this time, his appeal would be untimely and thus jurisdiction would not lie to consider it. *See Turner v. Turner*, 641 A.2d 342, 344 (Vt. 1993) ("This Court lacks jurisdiction of an appeal where notice is untimely filed[.]"). Accordingly, that claim is procedurally barred under Vermont law. *See St. Helen v. Senkowski*, 374 F.3d 181, 182 (2d Cir. 2008) ("We agree that [petitioner] did not raise the claim in the state courts, and, [therefore,] he is deemed to have exhausted those claims by procedurally defaulting on them[.]"). In turn, "the procedural bar that gives rise to exhaustion provides an

16

independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim[.]" *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *see Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) ("[A] claim is procedurally defaulted for the purposes of federal habeas review where the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.") (internal quotation marks and italics omitted) (quoting *Coleman*, 501 U.S. at 735).

Petitioner's remaining avenue for § 2254 review of his *Brady* claim requires him to "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Petitioner's frequent filings in the Vermont Superior Court and the Vermont Supreme Court demonstrate his familiarity with court proceedings. He has not identified any extenuating circumstances that impeded his compliance with court procedures and deadlines. As the Magistrate Judge observed, "Petitioner has not shown that any external factors impeded his efforts to comply with state appellate procedures in seeking review of the PCR proceedings, nor has he presented new information demonstrating that the alleged *Brady* violation 'worked to his actual and substantial disadvantage[.]'" (Doc. 39 at 11) (citation omitted).

In the May 13, 2024 R & R, the Magistrate Judge nonetheless allowed Petitioner another opportunity to "demonstrate that the [c]ourt should consider the *Brady* claim notwithstanding that it appears to be unexhausted and procedurally defaulted[]" and, in doing so, reminded Petitioner that "**in making the required showing, [Petitioner] must demonstrate cause for the default and actual prejudice as a result of the actual violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice**." (Doc. 36 at 6-7) (emphasis in original).

Petitioner has submitted four filings since the May 13, 2024 R & R, all of which reiterate his previous arguments. The terms "default" and "prejudice" do not appear in Petitioner's submissions, nor are they set forth in Petitioner's objections pending before

the court. The court nonetheless considers Petitioner's objections to determine whether they establish that the failure to consider his *Brady* claim will result in a fundamental miscarriage of justice.

With regard to the risk of a fundamental miscarriage of justice, the Magistrate Judge determined that Petitioner failed to satisfy this exacting standard. *See Sweet v. Bennett*, 353 F.3d 135, 142 (2d Cir. 2003) ("[T]he fundamental miscarriage of justice exception is extremely rare and should be applied only in the extraordinary cases.") (internal quotation marks omitted). The court agrees.

To the extent Petitioner is asserting a claim of actual innocence, he will have the opportunity to raise his actual innocence claims in the context of the plea agreement offered by the State at the direction of the PCR court. As the change of plea hearing has not been set, Plaintiff continues to pursue postconviction proceedings in State court which may result in his release or which may result in a rejection of his guilty plea and an affirmance of his conviction. This court must allow those proceedings to take place. *See* 28 U.S.C. § 2254(b)(1)(A).

Petitioner's "new" evidence of a *Brady* violation has been presented to the Vermont Superior Court on multiple occasions, as well as to this court. It is the law of the case that the DNA results discussed in the March 16, 2017 email were disclosed to Petitioner's attorney prior to his criminal trial. *See Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) ("The law of the case doctrine commands that 'when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case' unless 'cogent and compelling reasons militate otherwise.'") (citation omitted). *Brady* requires disclosure of exculpatory evidence in time for it to be reasonably used by the defense. *See Strickler v. Greene*, 527 U.S. 263, 280 (1999) (defining material evidence subject to *Brady* disclosure as evidence which "there is a reasonable probability that, had [it] been disclosed to the defense, the result of the proceeding would have been different") (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). The unappealed April 16, 2021 Order establishes that *Brady* was satisfied. Moreover, the information contained in the March 16, 2017 email does not negate

18

Petitioner's confession to the crime to Michael Richard, to Michael Hanson, and to Detective Ruth Whitney. Those confessions were presented to the jury that convicted him.

Examining the totality of the circumstances, the Magistrate Judge properly concluded Petitioner failed to establish that this is an extraordinary case in which Petitioner's claims have not received due process in Vermont's state courts, where there is credible and compelling evidence of actual innocence, and where there has been a clear miscarriage of justice. For that reason, the court adopts the R & R in full.

## CONCLUSION

For the foregoing reasons, the court hereby ADOPTS the Magistrate Judge's R & R (Doc. 39) as the court's Opinion and Order, DISMISSES the initial petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 4), and DISMISSES Petitioner's second petition (Doc. 17).

Pursuant to Fed. R. App. P. 22(b)(1) and 28 U.S.C. § 2253(c)(2), the court DENIES Petitioner a certificate of appealability in this matter because Petitioner has failed to make a substantial showing of the denial of a constitutional right.
SO ORDERED.

Dated at Burlington, in the District of Vermont, this 19th day of September, 2024.

Christina Reiss, Chief Judge
United States District Court

19